**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ebony Candelaria, | No. CV-21-00279-TUC-JCH (BGM) |
| Plaintiff, | |
| v. | **ORDER** |
| Kilolo Kijakazi, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Ebony Candelaria ("Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision by the Commissioner of Social Security denying her claims for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. (Doc. 1.) The matter was referred to Magistrate Judge Bruce G. Macdonald for all pretrial proceedings and a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) and LR Civ. 72.1 and 72.2. (Doc. 17.) After receipt of the certified administrative record ("AR"), Plaintiff filed her Opening Brief (Doc. 24), the Commissioner of Social Security ("Commissioner") filed an Answering Brief (Doc. 25), and Plaintiff filed a Reply (Doc. 26). The reference to the Magistrate Judge will be withdrawn. Based on the pleadings and the AR submitted to the Court, the Court denies Plaintiff's Opening Brief and affirms the Commissioner's decision.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Administrative History

On February 1, 2019, Plaintiff filed a Title II application for Social Security Disability Insurance Benefits ("DIB") alleging disability as of April 1, 2016, due to chronic midline low back pain, severe arthritis in back, joint pain left shoulder, high blood pressure, diabetes, muscle inflammation, degeneration of lumbar, bilateral wrist pain, sacroiliac joint dysfunction.[1] *See* Administrative Record ("AR") 14, 18–19, 114–15, 119–22, 125, 134–36, 140, 143, 145, 157, 172, 224, 226, 239, 243–44, 288, 314. The Social Security Administration denied Plaintiff's application initially, on reconsideration, and after an administrative hearing. (AR 14, 60–99, 114–32, 157–65, 176–77.)

On November 16, 2020, the ALJ issued a decision and concluded Plaintiff was not disabled. (AR 11–27.) Plaintiff requested review before the Appeals Council, which was denied on June 7, 2021, thereby making the ALJ's decision the final decision of the Commissioner. (AR 1–6.) This appeal followed.

### B. Plaintiff's Background

Plaintiff was thirty (30) years old at the time of the alleged onset of her disability and thirty-five (35) years old at the time of the administrative hearing. (AR 14, 25, 60, 114–15, 119, 122, 132–36, 140, 217, 226, 239, 244, 288, 314.) Plaintiff has a high school education.[2] (AR 25, 41, 80–81, 132–33, 224, 244; Doc. 24 at 2.) Prior to her alleged disability, Plaintiff worked as a hair stylist, security guard, courier, and cashier. (AR 76–80, 93, 129, 224, 245, 257–67.)

---

[1] Plaintiff filed a prior application under Title II and Title XVI on February 4, 2011. (*See* AR at 15, 35–59, 100–109.) On January 26, 2011, SSA denied this application on initial review. (*Id.* at 15, 103.) In the instant case, the Administrative Law Judge ("ALJ") found "[t]he presumption of nondisability has been rebutted in this case because there has been new medical and earnings evidence since the prior decision, and the passage of time has changed the relevant time period for evaluating the claimant's past relevant work." (*Id.* at 15.)

[2] Plaintiff's testimony and records are unclear regarding her precise level of education. Some forms and testimony reflect that Plaintiff has a high school diploma, but during her most recent hearing before the ALJ, she indicated that she only completed the 11th grade and did not receive a diploma or GED. (*Compare* AR at 41, 132–33, 224, 244, 2272, *with* AR at 80–81.)

- 2 -

### C. The ALJ's Application of the Five-Step Evaluation Process

To be found disabled and qualified for Disability Insurance Benefits or Supplemental Security Income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). The same five-step sequential evaluation governs eligibility for benefits under both programs. *See* 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140–142 (1987). The five-step process requires the claimant to show (1) she has not worked since the alleged disability onset date, (2) she has a severe physical or mental impairment, and (3) the impairment meets or equals a listed impairment or (4) her residual functional capacity ("RFC") precludes her from doing her past work. If at any step the Commissioner determines that a claimant is or is not disabled, the inquiry ends. If the claimant satisfies her burden through step four, the burden shifts to the Commissioner to show at step five that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *Lester v. Chater*, 81 F.3d 821, 828 n. 5 (9th Cir. 1995); *Bowen*, 482 U.S. at 146 n. 5 (describing shifting burden at step five).

In this case, at step one the ALJ found that Plaintiff had not engaged in substantial gainful activity from January through March 2017, after her alleged onset date of April 1, 2016, and that "there has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity." (AR 17.) At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine with sacroiliac joint dysfunction; degenerative disc disease of the cervical spine; tendinosis of the left shoulder; myofascial pain dysfunction syndrome; and obesity. (AR 18.) At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of one of the impairments listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1.

(AR 20.) Between steps three and four, the ALJ conducted an RFC assessment,[3] and concluded that Plaintiff:

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except [she] can stand or walk six hours in an eight-hour workday, and sit six hours in an eight-hour workday; can push and pull same as can lift and carry; can frequently climb ramps and stairs, kneel, and crouch; can occasionally climb ladders, robes, or scaffolds, and crawl; and can occasionally reach overhead with the left upper extremity

(AR 21.) After determining Plaintiff's RFC, the ALJ found at step four that Plaintiff has no past relevant work. (AR 25.) At step five, relying on testimony from the VE, the ALJ concluded that there are jobs that exists in significant numbers in the national economy that Plaintiff can perform. (AR 26.)

## II.     STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). Substantial evidence is more than a mere scintilla, but less than a preponderance, *Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted), and is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the

---

[3] "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007). A plaintiff's residual functional capacity is what she can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989).

evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

## III. PLAINTIFF'S CLAIMS

In her Opening Brief, Plaintiff presents two issues for review. (*Opening Brief*, Doc. 24 at 5–15.) She contends that the ALJ failed: (1) to articulate clear and convincing reasons to discount Plaintiff's symptom testimony; and (2) to properly analyze supportive opinion evidence of record. *Id.* Based on the alleged error, Plaintiff requests that the ALJ's decision be reversed and the matter remanded for further proceedings. *Id.* at 14.

## IV. ANALYSIS

### A. Plaintiff's Symptom Testimony

#### i. Legal Standard

An ALJ performs a two-step analysis to evaluate a claimant's testimony. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (citations omitted). First, the ALJ must evaluate the objective medical evidence of the underlying impairment which could be reasonably expected to cause the alleged symptoms or pain, and second, if there is no evidence of malingering, the ALJ can reject the claimant's testimony as to the symptoms' severity by offering specific, clear and convincing reasons. *Id.* at 1015 (citations omitted). The ALJ may consider a claimant's activities of daily living in determining whether those activities contradict her testimony about her symptoms or functional limitations. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2017); *see also Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) (when assessing credibility, the ALJ "may consider, among other factors, . . . 'the claimant's daily activities.'") (internal citation omitted). The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

#### ii. Analysis

Under Step Two, the ALJ found that Plaintiff's eye condition and mental impairments were not severe impairments and had no effect on Plaintiff's RFC. (AR 18.)

Plaintiff argues that her symptom testimony supports a finding of disabling conditions. (Doc. 24 at 6.) To establish whether [s]he qualifies for benefits, [Plaintiff] has the burden of proving an 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.2d 1190, 1193–94 (9th Cir. 2004) (quoting 42 U.S.C. § 423(d)(1)(A)). "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a). "The mere existence of an impairment is insufficient proof of a disability." *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (citations omitted). In evaluating mental impairments, their severity is determined by rating the degree of functional limitation resulting from the impairment. 20 C.F.R. § 404.1520a(d). If the degrees of limitation are "none" or "mild" the impairment will be deemed non-severe absent evidence that indicates there is more than a minimal limitation on the ability to do basic work activities. 20 C.F.R. § 404.1520a(d)(1). Here, the ALJ properly assessed that Plaintiff's visual and mental impairments were not severe and Plaintiff has failed to meet her burden to prove that these impairments are disabling. *Matthews*, 10 F.3d at 680.

### a. Visual Impairments

As to visual impairments, the ALJ found:

> Treatment notes indicate the claimant experiencing cataracts, with some eye swelling and blurriness, but treatment notes also indicate that, even without correction, the claimant's vision is 20/30 in the right eye and 20/40 in the left eye, and she has had normal ophthalmic evaluations (B33F; B37F; B38F). The record does not indicate diabetic vision complications (B33F; B37F).
>
> …
>
> There is sufficient evidence in the record to establish these conditions as medically determinable impairments. However, these impairments are not considered severe, as the record does

> not establish they cause more than minimal limitations in the claimant's ability to perform basic work activities, and have lasted or are expected to last for a period of 12 months or more. The undersigned has considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity.

(AR 18.)

The ALJ thoroughly reviewed Plaintiff's medical records regarding her eye examinations. On August 30, 2019, Dr. Martin reported that Plaintiff did not have any diabetic retinopathy, and she had a normal ophthalmic evaluation without explanation for visual disturbances and headaches that she reported. (*See* AR 18 (citing AR 2665)). Dr. Martin's examination was unremarkable. (AR 18 (citing AR 2665–70)). On November 13, 2019, Plaintiff was seen by Dr. McCafferty as an "emergency work in." (*See* AR 18 (citing AR 2731–33)). Dr. McCafferty noted cataracts, suspected glaucoma, and dry eye in both eyes, and no diabetic retinopathy. *Id.* Dr. McCafferty prescribed daily eye drops and directed Plaintiff to follow up in a year. *Id.* Following her visit with Dr. McCafferty in 2019, Plaintiff did not seek any further treatment for her eyes. There is no evidence that Plaintiff required further treatment for her eyes after receiving a prescription for daily eye drops. The ALJ's finding that Plaintiff's vision impairments were not severe and caused no more than minimal limitations in the claimant's ability to perform basic work activities is supported by substantial evidence. *See Mitchell v. Saul*, 2021 WL 3032667, at *8 (D. Nev. July 16, 2021) (ALJ is allowed to consider whether a "claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record."); *see also Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012) (quoting *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) ("[I]f a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated[.]").

### b. Mental Limitations

The ALJ evaluated Plaintiff's mental impairments following the requirements set

forth in 20 C.F.R. § 404.1520a and the Listing of Impairments (20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00).  (AR at 19.)  The ALJ determined that Plaintiff suffered only "mild" limitations in the four broad functional areas known as the "paragraph B" criteria—understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.  *Id.*; 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00.A.2.b.  The ALJ reviewed Plaintiff's medical records, as well as the medical opinion evidence of record.  AR at 19–20.  As a result, the ALJ concluded that "[b]ecause the claimant's medically determinable mental impairments cause no more than 'mild' limitation in any of the functional areas <u>and</u> the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, they are nonsevere."  (AR at 20 (emphasis in original) (citing 20 C.F.R. § 404.1520a(d)(1))).

Plaintiff asks this Court to reweigh the evidence and find that her reported mental health symptoms are distracting to the point of disability. (Doc. 24 at 8.) She argues that at individual counseling appointments, she consistently presented with symptoms of depression and anxiety and continued to have an anxious mood after increasing medications. (Doc. 24 at 8.) Moreover, she argues, "[t]here is no indication that the ALJ found mental [] impairments improved with treatment." (Doc. 24 at 11.) This is incorrect. The ALJ observed "the claimant has shown some responsiveness to psychological medications," and considered Plaintiff's reported improvement:

> At an April 2019 consultative psychological examination, the claimant reported feelings of sadness, *though she reported this is helped with medication (B16F).* On examination, the claimant displayed mental status findings grossly within normal limits, including appropriate appearance and grooming, intermittent eye contact, cooperative behavior, adequate speech, normal thought process, adequate registration and recall, adequate attention and concentration, and adequate ability to follow instructions (B16F). In addition to medications, the claimant has had ongoing treatment in counseling (B25F). *In counseling, the claimant has repeatedly*

> *reported doing well,* and that she spends a lot of time taking care of her children, and she has displayed grossly normal findings on mental status examination, including full affect, clear speech, logical thought process, normal thought content, normal cognition and intelligence, and normal insight and judgment (B25F/28, 33, 45, 49, 59, 63).

(AR 19 (emphasis added)). Moreover, the ALJ relied on the State Agency examiners' opinions, (*See* AR 19, citing (AR 114–131; AR 134–151)), and objective medical evidence, (*See* AR 19, citing (AR 1232–37; AR 2205–2470), to properly disregard her symptom testimony. (AR 19 ("The consultants support their opinions with specific references to the record noting, for example, that the claimant has shown some responsiveness to psychological medications. Additionally, the record is most consistent with no more than mild psychological limitations, and no severe mental limitations, as evidenced by the claimant persistently displaying mental status findings grossly within normal limits.")).

Plaintiff seems to argue that the ALJ unreasonably found that her daily activities were inconsistent with her allegations of disabling symptoms.[4] (Doc. 24 at 8–10.) The ALJ found Plaintiff could "care for children with disabilities, live with others, use public transportation, count change, manage her own finances, read, write, and listen to music for pleasure, spend time with family, and get along with authority figures[.]" (AR at 23 (citations omitted)). Plaintiff asserts that "the ALJ did not discuss some important qualifications to several of these activities and failed to present a clear and convincing reason to disregard symptoms testimony, evening considering activities in the aggregate." (Doc. 24 at 9.)  In response, the Commissioner relies in-part on *Molina v. Astrue*, 674 F.3d 1104 (9th Cir. 2012), to argue that the ALJ may draw reasonable inferences from the record. (Doc. 25 at 10.)

---

[4] A claimant's reported daily activities can form the basis for an adverse credibility determination if they consist of activities that contradict the claimant's "other testimony" or if those activities are transferable to a work setting. *Orn*, 495 F.3d at 639; *see also Fair v, Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (daily activities may be grounds for an adverse credibility finding "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.").

- 9 -

*Molina* involved a plaintiff who testified that she was incapable of being around people without suffering debilitating panic attacks. 674 F.3d at 1113. The Ninth Circuit found the ALJ reasonably concluded that certain activities, including, "walking her two grandchildren to and from school, attending church, shopping, and taking walks" undermined her symptom testimony. *Id.* In particular, her activities involved a degree of human interaction that was analogous to that required by her past relevant work environment where she worked in a large room occupied by only four or five other people, with whom she did not generally need to interact. *Id.*

Here, the ALJ did not indicate how such activities were transferable to Plaintiff's work conditions as to the asserted mental limitations. Any such error, however, was harmless considering the ALJ also relied on Plaintiff's self-reported improvement, the State Agency examiner's opinions, and objective medical evidence to properly disregard her symptom testimony. If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, as here, it is the Commissioner's conclusion that must be upheld. *Id.* The ALJ properly discounted Plaintiff's symptom testimony.

### B. Medical Opinion Evidence

#### i. NP Confino's Opinion

On August 6, 2020, NP Confino completed a Mental Residual Functional Capacity Assessment. (AR 2631–33.) NP Confino diagnosed Plaintiff with major depressive disorder, generalized anxiety disorder, and post-traumatic stress disorder. (AR 2631.) NP Confino further noted that Plaintiff "has a specific learning disability in language delay, reading, writing, and math affects depression." (AR 2631.)

NP Confino opined that Plaintiff had marked limitations in her ability to understand, remember, or apply information and adapt or manage herself; and extreme limitations in her ability to interact with others, and concentrate, persist, or maintain pace. (AR 2631.) NP Confino reasoned that constant migraines, depression, and high blood pressure make it

difficult to Plaintiff to concentrate; a learning disability makes it difficult for her to understand, remember, or apply information, and Plaintiff has sleep apnea; she does not make or have friends, has an estranged relationship with family, trust issues, and is afraid of not fitting in; Plaintiff has severe migraines, depression, anxiety, chronic pain, and out of control blood pressure which makes it difficult for her to perform even the smallest tasks and requires assistance from family; and Plaintiff has difficulty adapting to changes in the environment, chronic pain, depression, and anxiety, which make it difficult for her to manage herself on a daily basis, she needs constant reminders from family to take her medications, certain activities, homework from therapy, and doctor appointments, and to do things for her children, she is very forgetful. (AR 2631.)

NP Confino opined that Plaintiff's symptoms would interfere with her ability to work. Specifically, NP Confino indicated that Plaintiff's ability to perform work-related functions would be less than 10% (percentage in a total work-month) with respect to her ability to: understand and remember detailed instructions, interact appropriately with the general public, maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, carry out very short and simple instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance, sustain an ordinary routine without special supervision, work in coordination with or in proximity to others without being distracted by them, make simple work-related decisions, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, respond appropriately to changes in the work setting, and travel in unfamiliar places or use public transportation. (AR 2632.) NP Confino also indicated that Plaintiff's ability to perform work-related functions would be between 10%–15% (percentage in a total work-month) with respect to her ability to: remember locations and work-like procedures, understand and remember very short and simple instructions, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, carry out detailed instructions,

and set realistic goals or make plans independently of others. (AR 2632.) Lastly NP Confino indicated that Plaintiff's ability to perform work-related functions would be between 15%– 20% (percentage in a total work-month) with respect to her ability to ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, and be aware of normal hazards and take appropriate precautions. (AR 2632.)

NP Confino reported that Plaintiff had been with Community Partners for approximately one and a half years (1.5) and was with COPE community services before that. (AR 2633.) NP Confino indicated that Plaintiff had experienced an exacerbation of symptoms and a deterioration in functioning when faced with changes in environment or demands that were not already a part of her life. (AR at 2633.) NP Confino observed that Plaintiff's symptoms increase with any changes in the environment; her symptoms increase in depression, anxiety, and stress; she has difficulty adjusting to any change; she isolates when faced with a room full of people; her symptoms increase including rapid heartbeat, chest pain, shallow breathing, will get angry and lash out; Plaintiff is unable to go to restaurants or malls because she feels everyone is looking at her—she tries but can only stay ten (10) to twenty (20) minutes then has to leave because she feels like the walls are closing in on her. (AR at 2633.)

### ii. Legal Standard

Because Plaintiff filed her application after March 27, 2017, medical source opinions are evaluated under the revised regulations. Under the revised regulations, an ALJ's decision to discredit any medical opinion "must simply be supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). There is no "inherent persuasiveness" in either a claimant's own medical sources or government consultants. *Id.* at 791 (citing Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017) (codified at 20 C.F.R. pts. 404 & 416)). Instead, the ALJ must consider all the medical opinions in the record and evaluate each medial opinion's persuasiveness using factors. 20 C.F.R. § 416.920c. The two most important factors are

"supportability" and "consistency." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ must articulate "how [he or she] considered the supportability and consistency of factors for a medical source's medical opinions... in [his or her] decision." 20 C.F.R. §§ 404.1520c(b)(2), 416.1520c(b)(2).

With regard to supportability, the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions ... will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). As to consistency, the "more consistent a medical opinion(s) is with the evidence from other medical sources in the claim, the more persuasive the medical opinion(s) ... will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ is not required to explain how she considered other factors, unless the ALJ finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *See* 20 C.F.R. §§ 404.1520c(b)(3), 416.1520c(b)(3). Even if there is some error, the Court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. Courts look to the whole record to determine whether an error alters the outcome of a case. *Id.* at 1115. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (internal citation omitted).

### iii. Analysis

The ALJ "found unpersuasive" NP Confino's medical opinion finding:

> Justine Confino, NP, one of the claimant's treatment providers, opined that the claimant had marked limitations in understanding, remembering, and applying information, and in adapting and managing oneself, and extreme limitations in interacting with others and concentrating, persisting, and maintaining pace, and provides "percent of the day" values for the claimant's activities of daily living, consistent with the opinions on broad areas of mental functioning (B30F). This opinion lacks supportability and consistency with the record. Nurse Confino supports her opinion with an in-person treating

> relationship with the claimant. However, though she provides some explanation for the opined limitations, Nurse Confino *does not directly link specific objective medical findings with limitations of the opined severity*. Additionally, the record is *most consistent with no more than mild psychological limitations, and no severe mental limitations*, as evidenced by the claimant persistently displaying mental status findings grossly within normal limits (B16F; B25F). Accordingly, because this opinion lacks supportability and consistency with the record, it is found unpersuasive.

(AR 20 (emphasis added)).

As an initial matter, the ALJ thoroughly reviewed the evidence in the record to support the RFC determination and noted the supportability and consistency factors in evaluating NP Confino's opinion. Specifically, the ALJ compared NP Confino's opinions with her treatment observations which generally showed Plaintiff's normal mental status. (AR 19–20 citing (AR 2274–77 (PNP Confino treatment notes dated 3/26/2020, "Thought content: Within normal limits[;] Cognition: Within normal limit[;] Intelligence estimate: Average[;] Insight: Within Normal Limits[;] Judgment: Within normal limits"); (AR 2299–2303 (PNP Confino treatment notes dated 1/29/2020, "Thought process: Logical[;] Perception: Within normal limits[;] Cognition: Within normal limit[;] Intelligence estimate: Average[;] Insight: Within Normal Limits[;] Judgment: Within normal limits"); (AR 2367–2371 (PNP Confino treatment notes dated 10/10/2019, "Thought process: Logical[;] Perception: Within normal limits[;] Cognition: Impairment of: Short term Long Term Memory[;] Intelligence estimate: Average[;] Insight: Within Normal Limits[;] Judgment: Within normal limits")). The ALJ concluded that NP Confino's opinion lacked support, or were otherwise inconsistent, with her own treatment notes and the longitudinal record. (*See* AR 20.) Importantly, Plaintiff fails to address the ALJ's finding that NP Confino failed to "directly link specific objective medical findings with limitations of the opined severity." (AR 20.)

Moreover, the ALJ did not reject NP Confino's opinions solely on the internal inconsistency of her treatment notes. Rather, the ALJ also contrasted NP Confino's opinion

with the examining physician records by Amy D'Ambrosio, Psy.D. ("Dr. D'Ambrosio"). (AR 20 (citing B16F, Dr. D'Ambrosio's Psychological Evaluation)). Dr. D'Ambrosio performed a clinical interview, administered a Mini Mental Status Exam ("MMSE"), and reviewed Plaintiff's medical record, including an Adult Function Report. (AR at 1232.) In a separate paragraph, the ALJ found, "Dr. D'Ambrosio supports her opinion with an in-person examination of the [Plaintiff], noting mental status findings grossly within normal limits. Additionally, the record is most consistent with no more than mild psychological limitations, and no severe mental limitations, as evidenced by the [Plaintiff] persistently displaying mental status findings grossly within normal limits (B16F; B25F)." (AR 19.) Plaintiff essentially asks the Court to reweigh NP Confino's opinion more favorably to her, but Plaintiff's alternate interpretation is not enough to assign error to the ALJ's findings. The Court will not reweigh the evidence. Where "the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007). The Court finds that the ALJ's findings well supported by the record.

V.   **ORDER**

Based on the foregoing,

**IT IS ORDERED WITHDRAWING** the Court's referral of this matter to Magistrate Judge Bruce G. Macdonald.

**IT IS ORDERED AFFIRMING** the decision of the Commissioner.

**IT IS FURTHER ORDERED** that the Clerk of the Court enter judgment accordingly and terminate this action.

Dated this 30th day of September, 2022.

_____
Honorable John C. Hinderaker
United States District Judge